THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN 256535)
Jeffrey Mikel, Esq., (SBN 350671)
5100 Campus Drive, Suite 200
Newport Beach, CA 92612
Telephone: (949) 825-5200
Facsimile: (949) 313-5001
Email: cameron@sehatlaw.com

Attorneys for Plaintiffs,
JUSTIN J. GOSS, individually, and CRYSTAL BRANQUINHO, individually

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN J. GOSS, individually; and CRYSTAL BRANQUINHO, individually<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY of SAN LUIS OBISPO, a government entity; WELLPATH; a Delaware limited liability company; California Forensic Medical Group, a California corporation; JACOB BLACK, in his individual capacity; AMBER BORTELLO, in her individual capacity; FRANCINE TILLMAN, in her individual capacity; YLLIANA KELLER, in her individual capacity; and DOES 1-10;<br>Defendants. | Case No.: 2:26-cv-04235 SB (RAOx)<br><br>**PLAINTIFFS' OPPOSITION TO CFMG DEFENDANTS' MOTION TO DISMISS** |

**TABLE OF CONTENTS**


| | |
|---|---|
| **I. INTRODUCTION** | **3** |

| | |
|---|---|
| **II. MOTION TO DISMISS LEGAL STANDARD** | **3** |
| **III. ARGUMENT** | **3** |
| **A. Plaintiffs States a Viable Claim Under 42 U.S.C. § 1983 Against all Against all WELLPATH/ CFMG Defendants** | **3** |
| **B. Plaintiffs Adequately Plead Municipal Liability Under a Monell unconstitutional policies and practices theory.** | **9** |
| **C. Plaintiffs sufficiently pled a Monell claim under the ratification theory** | **11** |
| **D. Plaintiffs Adequately Plead Failure to Train** | **12** |
| **E. Plaintiffs have sufficiently alleged a state created danger claim.** | **13** |
| **F. Plaintiff has sufficiently pled a claim under the BANE Act.** | **14** |
| **IV. CONCLUSION** | **14** |


**TABLE OF AUTHORITIES**


| | |
|---|---|
| **CASES** | |
| ***Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)** | **3** |
| ***Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)** | **3** |
| ***Bell v. Mahoney*, 2020 WL 4334115 (recommendations adopted in 2020 WL 525895)** | **7** |
| ***Castro v. County of Los Angeles*, 833 F.3d at 1071** | **4** |
| ***Conn v. City of Reno*, 591 F. 3d 1081, 1091 (9th Cir. 2010), cert. Granted, judgment vacated sub nom. *City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), and opinion reinstated, 658 F.3d 897 (9th Cir. 2011)** | **4** |
| ***Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002)** | **3** |
| ***Gordon v. County. Of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)** | **4, 5, 9** |
| ***Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)** | **5** |
| ***Khademi v. Nielson*, 2020 WL 598082** | **6** |
| ***Lyte v Carl*, 382 F3d 978 (9th Cir 2004)** | **11** |

| | |
|---|---|
| ***Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018)** | **14** |
| ***Russell v. Lumitap,* 31 F. 4th 729, 740 (9th Cir. 2022)** | **4, 5** |
| ***Sandoval v. Cnty. of San Diego,* 985 F.3d 657, 669 (9th Cir. 2021)** | **4, 5** |
| ***Snow v. McDaniel,* 681 F.3d 978, 988 (9th Cir. 2012)** | **5** |
| ***Toguchi v. Chung*, 391 F.3d 1051 (2004)** | **7, 8** |
| **CONSTITUTIONAL PROVISIONS** | |
| **U.S. Const. amend. XIV** | **4, 7** |
| **STATUTES AND RULES** | |
| **42 U.S.C. § 1983** | **3** |
| **Fed. R. Civ. P. 12(b)(6)** | **3** |

**<u>MEMORANDUM OF POINTS OF AUTHORITIES IN OPPOSITION TO WELLPATH/CFMG'S DEFENDANTS' MOTION TO DISMISS</u>**

## I. INTRODUCTION

This civil rights action with state law claims arising from serious and debilitating injuries Mr. Goss sustained as a pretrial detainee in the San Luis Obispo County Jail resulting from Defendants' deliberate indifference to a known and substantial risk that he would commit suicide or attempt to do so.

Defendants Wellpath, CFMG, Amber Bortello, Francine Tillman, and Ylliana Keller (collectively the Wellpath/CFMG Defendants) now move to dismiss various claims against them in the Second Amended Complaint.

## II. MOTION TO DISMISS LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *<u>Bell Atl. Corp. v. Twombly</u>*, 550 U.S. 544, 570 (2007). A claim is facially plausible where the pleaded facts permit "the reasonable inference that the defendant is liable for the misconduct alleged." *<u>Ashcroft v. Iqbal</u>*, 556 U.S. 662, 678 (2009). Although detailed factual allegations are not required, a complaint must contain "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *<u>Twombly</u>*, 550 U.S. at 555.

In evaluating the sufficiency of a complaint, the Court accepts well-pleaded factual allegations as true, *<u>Iqbal</u>*, 556 U.S. at 678 (citing *<u>Twombly</u>*, 550 U.S. at 555), and construes the complaint in the light most favorable to the plaintiff. *<u>Gompper v. VISX, Inc</u>*., 298 F.3d 893, 896 (9th Cir. 2002).

## III. ARGUMENT

### A. Plaintiffs States a Viable Claim Under 42 U.S.C. § 1983 Against all WELLPATH/ CFMG Defendants

"When an individual is taken into custody and thereby deprived of her liberty, the officials who hold her against her will are constitutionally obligated to

respond if a serious medical need should arise. If, with deliberate indifference, these officials fail to respond appropriately and instead act in a manner that will foreseeably result in harm, they violate her due process rights," *Conn v. City of Reno*, 591 F. 3d 1081, 1091 (9th Cir. 2010), cert. Granted, judgment vacated sub nom. *City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), and opinion reinstated, 658 F.3d 897 (9th Cir. 2011). Where officials, with deliberate indifference, fail to respond appropriately to a serious medical need and act in a manner that foreseeably results in harm, they violate the detainee's due process rights. *Id*.

Under the Fourteenth Amendment, the elements of a pretrial detainee's medical care claim against an individual defendant are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cnty. Of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

In the context of pretrial detainees' rights under the 14th amendment, The third element is objective such that the defendant's conduct must be "objectively unreasonable," requiring "more than negligence but less than subjective intent—something akin to reckless disregard.'" *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (quoting *Castro v. County of Los Angeles*, 833 F.3d at 1071).

The provision of some medical care does not necessarily preclude constitutional liability. As the Ninth Circuit has explained "a plaintiff need not 'prove complete failure to treat' because 'access to medical staff is meaningless unless that staff is competent and can render competent care.'" *Russell v. Lumitap*,

31 F. 4th 729, 740 (9th Cir. 2022). Although medical negligence alone is insufficient, "the care rendered can be so inadequate to the circumstances known to medical staff as to amount to a deliberate indifference." Id. at 741. As such, officials may nonetheless violate the Constitution "when they 'deny, delay or intentionally interfere' with needed medical treatment," or when they "choose a course of treatment that is 'medically unacceptable under the circumstances.'" Sandoval, 985 F.3d at 679 (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012)).

Applying this standard, the Second Amended Complaint sufficiently alleges deliberate indifference as to the Wellpath/ CFMG nurses/ mental health providers Amber Bortello, Francine Tillman, and Ylliana Keller.

In fact, the facts alleged in the second amended complaint neatly track the elements of a deliberate indifference claim under Gordon v. Cnty. Of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). (i) each of the defendant nurses made an intentional decision with respect to the conditions under which the plaintiff was confined (i.e. allowing the plaintiff to be housed in general population despite knowing he was at risk for suicide); (ii) those conditions put the plaintiff at substantial risk of suffering serious harm (Goss was in general population rather than suicide prevention housing at risk of ending his life or sustaining grave injuries); (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious (i.e. defendants knew he was at risk and nevertheless failed to place Mr. Goss in suicide prevention housing and/or call for additional monitoring); and (iv) by not taking such measures, the defendant caused the plaintiff's injuries (Mr. Goss was able to attempt suicide by jumping head first from the second floor of his housing tier).

The Wellpath/ CFMG Defendants nevertheless contend that Plaintiffs'

allegations concerning the medical and mental health care provided to Plaintiff GOSS fail to state a claim for deliberate indifference. In substance, they argue that because Mr. Goss received some medical and/or mental-health treatment, any alleged deficiency in that treatment amounts, at most, to a disagreement concerning clinical judgment and therefore cannot constitute deliberate indifference. Defendants argument is not supported by the caselaw they cite in their motion.

Defendants cite Khademi v. Nielson 2020 WL 598082, without providing critical context which makes the case readily distinguishable from the instant case. The facts giving rise to Plaintiff Khademi's claim involved Plaintiff getting punched in the face by another inmate, losing a tooth, and suffering a swollen face and facial pain. Id. At 2. While much of the court's analysis was focused on the plaintiff's failure to protect claim, Khademi also challenged the medical care he received. The factual basis for this challenge appears to have been that the nurse did not see him for two hours after the incident and did not transport him to the hospital. Id., at 5-6. As the court noted, the "Plaintiff fails to allege facts demonstrating substantial harm suffered as a result of the two hours delay." Id., at 6. Thus, in essence the Khademi plaintiff challenged the quality or location of medical treatment after the injury had already occurred.

Here by contrast, the deliberate indifference claim against the named Wellpath/CFMG nurses is that each failed to act on a recognized suicide risk by not implementing the very precautions that would have removed Mr. Goss from dangerous the circumstance, (i.e. by allowing him to be placed in general population and/or not ordering any type suicide prevention monitoring.) Plaintiff's contention is not that he should have received better care, but rather that Defendants recognized an acute risk of suicide and then failed to act on that risk. Had Plaintiff been placed in suicide-watch housing and appropriately monitored,

as Defendants knew was warranted, he would not have had the same opportunity to inflict the catastrophic injuries at issue.

Defendants citation to Bell v. Mahoney, 2020 WL 4334115, (recommendations adopted in 2020 WL 525895) similarly involves easily distinguishable facts. There, the plaintiff alleged that a physician misdiagnosed his skin condition by disagreeing with an outside doctor's uncertain diagnosis of Stevens-Johnson Syndrome; the court held that the competing diagnoses, where the cause of the condition itself remained uncertain, amounted at most to a negligent misdiagnosis. Id. at 5. Here, by contrast, there was no comparable diagnostic uncertainty about whether Plaintiff presented a suicide risk. The nurses identified objective suicide-risk factors and nevertheless failed to make a recommendation for protective housing or monitoring and instead deferred the housing decision to classification. Bell, provides no support for defendants' contentions here.

Defendants also cite to Toguchi v. Chung, 391 F.3d 1051 (2004) however virtually all of the court's holdings explicitly that found Dr. Chung not liable for deliberate indifference do so explicitly based on the absence of the subjective component of deliberate indifference analysis under the 8th amendment standard applicable to convicted inmates, which is not applicable in the instant case. The Court explained the rule stating, "A prison official acts with 'deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.' Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference."" Toguchi, at 1057. (Internal citations omitted.)

Regarding the Plaintiff's contention that Defendant ignored a substantial risk by treating decedent with Cogentin, the court stated, "Dr. Chung expressly stated that she never considered use of Cogentin to pose a serious risk, and the record contains no evidence to the contrary. […] Because she did not *believe* that

Cogentin use presented a serious risk of harm to Keane, her conduct cannot constitute deliberate indifference" Toguchi, at 1058. (emphasis added).

Plaintiffs also contended that Decedent suffered Klonopin withdrawal the court responded, "There is absolutely *no indication* in the record that Dr. Chung was *aware of a risk* that Keane was suffering from Klonopin withdrawal. *Absent such an awareness*, there can be no liability under the Eighth Amendment. Toguchi, at 1059 (Internal citation omitted and Emphasis added.)

Plaintiffs contended Dr. Chung "disregarded [the] serious and known risks" of combining" three drugs. The court noted plaintiff's expert "lacked any insight into Dr. Chung's subjective knowledge" and since Dr. Chung had nor performed an assessment, the court stated, "If Dr. Chung had assessed Keane and determined that he was suffering from withdrawal and, *in the face of that knowledge*, administered drugs that she knew to be life-threatening, her conduct might then meet the deliberate indifference standard." Toguchi, at 1059 (emphasis added).

Regarding the plaintiffs' claim that Dr. Chung failed to perform a differential diagnosis, the court stated, "The there is no evidence that Dr. Chung was *subjectively aware* that her failure to conduct a differential diagnosis created a "substantial risk of serious harm" to Keane," and then added, "It does not matter whether Dr. Chung's assumptions and conclusions were reasonable. Rather, so long as she was not subjectively aware of the risk that Keane could be suffering from a drug overdose, and disregarded that risk, she was not deliberately indifferent." Toguchi, at 1060. (emphasis added).

Defendants further contend that Mr. Goss did not inform the CFMG/Wellpath nurse defendants of his active suicidal thoughts and so defendants could not have been deliberately indifferent. Defendants are eager to reframe the issue as one of a dispute about professional judgment but their fundamental premise is flawed and lacks support in caselaw. Performing an

evaluation does not immunize a defendant from deliberate indifference if the facts alleged show that the defendant recognized the risk and then failed to take reasonable measures to address it. The Complaint alleges that Defendants identified objective factors indicating that Plaintiff was at risk of suicide, recognized that risk, and then failed to recommend/order suicide-watch housing or appropriate monitoring, and instead deferred to classification to determine Plaintiff's housing. If anything the allegations in the complaint which must at this stage be taken as true are that the Wellpath / CFMG nurse defendants exercised no judgment as to Goss's housing and instead deferred to classification,

Finally, Defendants' reliance on _Gordon v. Cnty. Of Orange_, 888 F.3d 1118, 1125 (9th Cir. 2018) for the argument that plaintiff must prove something akin to reckless disregard rather than negligence is puzzling because the claims against the Welpath/ CFMG nurses are that they knew of Goss's risk of suicide and failed to take reasonable and available measures to abate that risk.

**B. Plaintiffs Adequately Plead Municipal Liability Under a *Monell* unconstitutional policies and practices theory.**

Defendants first contention regarding Plaintiffs Monell claims is that the claims are alleged against the County and not CFMG. However, the fact that the County may also be liable for a constitutionally deficient policy or practice does not logically eliminate the provider's liability for implementing, maintaining, ratifying, or acquiescing in that same policy. For example, the Second Amended Complaint's pled fact that Wellpath/ CFMG nurses and mental health professional were deferring to classification on housing decisions without so much as making an independent recommendation from a clinical perspective clearly implicates both the County and Wellpath/CFMG because of Wellpath/CFMG's role in implementing, maintaining, ratifying, or acquiescing in this defective policy.

Contrary to Defendants' assertions, the Second Amended Complaint also sufficiently pleads unconstitutional policies, customs and practices specific to

Wellpath/CFMG. The complaint alleges inadequate suicide-risk assessment/reassessment at ¶¶ 14, 15, 81, 101; Failure to monitor/escalate treatment for known psychiatric risk at ¶¶ 14, 15, 83–86; Failure to provide adequate/qualified mental-health personnel and training at ¶¶ 14, 91, 95, 101–112; Failure to communicate and act on accumulated suicide-risk information at ¶¶ 15, 47, 75, 81.

Defendants next argue that the prior instances of Wellpath violating inmates rights are not relevant because they involve different facts, circumstances, and illnesses. However, the fact that the detainees in those cases presented with different medical conditions does not diminish the relevance of those incidents. Plaintiffs do not allege a custom limited to the treatment of suicide risk. The alleged commonality is a recurring failure to recognize, monitor, respond to, and appropriately escalate serious medical needs. At the pleading stage, those alleged prior incidents provide factual support systemic deficiencies in defendants provision of jail medical and mental health care.

Moreover, since Wellpath/CFMG are contractors that provide jail medical and mental health services in many counties in California, Wellpath/CFMG is not a jail-specific policymaker whose practices necessarily begin and end at San Luis Obispo County Jail. Thus, allegations concerning Wellpath/CFMG's practices at other California facilities are relevant to whether the company maintained a broader corporate practice, including with respect to suicide-prevention training, screening, and mental-health reassessment.

For example ¶ 101 alleges that a grand jury investigation in Ventura County found specific deficiencies in Wellpath's suicide-prevention training and behavioral-health delivery, including but not limited to: a) deficiencies in training regarding suicide prevention, b) that "the medical and behavioral health delivery process in the Ventura County Jails has often been reactive rather than proactive," c) that the intake screening practice and reassessments during incarceration do not

always provide a complete evaluation of current medical and behavioral health, and d) that involvement of the public and independent subject matter experts in the review of deaths in jail may reduce the risk of death." These findings mirror the pled deficiencies in Wellpath/CFMGs policies in the instant case and sufficiently support the plaintiff's Monell claims at the pleadings stage.

In addition, the 2021 DOJ Findings Letter, and the 2025 DOJ Settlement Agreement etc., described in ¶ ¶ 74-85 and 111-116, establish a pattern of deliberate indifference to serious medical and mental health conditions at the SLO county jail relevant to the practices and notice by both the County and Wellpath/CFMG. The DOJ investigation, Findings Letter, and Settlement Agreement further support the sufficiency of Plaintiffs' Monell claims because the SAC expressly alleges that Wellpath and CFMG policymakers had actual notice through those proceedings of systemic deficiencies in monitoring, housing, communication, and mental-health evaluation. SAC ¶¶ 114–116.

**C. Plaintiffs sufficiently pled a Monell claim under the ratification theory**

Defendants' argue that plaintiffs' Monell ratification claim is insufficiently pled because the Second Amended Complaint does not identify a authorized policy maker and cite Lyte v Carl, 382 F3d 978 (9th Cir 2004), a single case which dealt with the plaintiff's ratification claim after the jury returned a verdict. However, *Lytle* does not hold that a plaintiff must identify a final policymaker by name to plead a ratification theory. Instead the case analyzed, after a jury trial, whether particular officials possessed final policymaking authority under the applicable state law and the school district's delegation of authority. Id. at 982–86.

In any case, the second amended complaint sufficiently alleges a ratification theory. It expressly alleges that "COUNTY, WELLPATH, and CFMG policymakers had actual notice of systemic deficiencies in suicide prevention practices," including deficiencies in monitoring, housing, communication, and

mental-health evaluation. SAC ¶¶ 113–116. The SAC further alleges that Wellpath/CFMG personnel acted with their principals' “complete authority and ratification,” SAC ¶¶ 29–31, 40, and alleges specific facts concerning Wellpath's prior knowledge of and response to constitutionally deficient medical practices, including Wellpath's ratification and endorsement of constitutionally inadequate care through its review process. SAC ¶ 95. At the pleading stage, these allegations plausibly support an inference that Wellpath/CFMG policymakers knew of and approved the deficient practices alleged here.

**D. Plaintiffs Adequately Plead Failure to Train**

Defendants first argue that the failure-to-train allegations are directed only to the County because paragraphs 103 through 112 refer to “COUNTY staff.” Here, too the failure to train claims against the County are equally valid against CFMG/Wellpath, the County’s contractual jail medical and mental health provider. Moreover, defendants have explicitly assumed as much in their motion papers. Read as a whole, the same allegations may support liability against both the County and its contracted medical providers.

Contrary to Defendants’ contention, the SAC does not infer inadequate training solely from Plaintiff’s suicide attempt. It identifies specific deficiencies in training concerning suicide-risk assessment, objective risk indicators, methamphetamine-related psychiatric symptoms, communication of risk information, follow-up after positive mental-health screens, and the use of suicide-resistant housing and constant observation. SAC ¶¶ 103–110. It also alleges corresponding failures by three Wellpath/CFMG mental-health professionals: Tillman made no follow-up, housing, or monitoring recommendation; Bortello underweighted Plaintiff’s risk factors, classified his risk as low, and deferred housing to classification; and Keller likewise failed to recommend protective housing or monitoring despite additional indicators of psychological distress. SAC ¶¶ 51–63, 73–78. The recurrence of the same deficiencies among multiple

employees plausibly supports deficient training or supervision rather than an isolated individual mistake.

The SAC also alleges prior notice of deficient training independent of the incident at issue. It alleges that Wellpath was investigated by a Ventura County grand jury in connection with twenty-five detainee deaths between 2016 and 2022 and that the resulting findings specifically identified deficiencies in suicide-prevention training, reactive behavioral-health delivery, and intake-screening and reassessment practices that did not always produce a complete evaluation of a detainee's current behavioral health. SAC ¶ 101. Those are substantially the same deficiencies alleged here.

In addition, the DOJ investigation and consent described in the Second Amended Complaint provide a further independent basis for notice. SAC ¶ 114. Those deficiencies included inadequate monitoring, housing decisions, communication, and mental-health evaluations, the same subjects on which the Second Amended Complaint alleges inadequate training here. SAC ¶¶ 103–111, 114–116.

Defendants' demand for the contents of Wellpath/CFMG's "actual mental health training program" improperly seeks evidentiary detail concerning an internal corporate program before discovery. At the pleading stage, Plaintiffs have identified what training was constitutionally deficient, how those deficiencies caused Mr. Goss's injuries, and the prior notice supporting deliberate indifference.

**E. Plaintiffs have sufficiently alleged a state created danger claim.**

Defendants incorrectly characterize this claim as resting solely on omissions. The Second Amended Complaint alleges affirmative clinical assessments and disposition decisions that left Goss in general population despite known suicide-risk factors. Bortello classified Goss's suicide risk as "low" and deferred his housing to classification; Tillman designated follow-up as merely PRN; and Keller deferred further treatment until the following week. SAC ¶¶ 51–

63. These decisions exposed Goss to the particularized danger of remaining minimally monitored in a unit with access to an elevated tier, rather than receiving protective housing, observation, or a higher level of care. SAC ¶¶ 129–133. Moreover, these decisions left Goss worse off because, as an incarcerated detainee, he was not free to leave the dangerous setting, obtain treatment elsewhere, or independently place himself in protective housing.

The resulting danger was foreseeable because Defendants knew of Goss's prior suicide attempts, psychiatric history, methamphetamine use, positive mental-health screen, and continuing signs of psychological distress. SAC ¶¶ 48–63, 72–78. Whether Defendants' affirmative assessments and disposition decisions increased the danger to Goss is therefore a factual question that cannot be resolved by recasting those decisions as omissions on a motion to dismiss.

**F. Plaintiff has sufficiently pled a claim under the BANE Act.**

Defendants' main challenge to the Bane Act claim depends on their contention that the SAC fails to plead deliberate indifference and, consequently, the required specific intent. The reasons argued above in support of Plaintiff's Deliberate indifference claim are equally applicable here.

To the extent defendants also contend the Second Amended complaint has not sufficiently pled the requisite intent under the Bane Act, It is well established that reckless disregard for a detainee's constitutional rights is sufficient evidence of that intent. *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) ("[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.").

As discussed above, the SAC plausibly alleges that Tillman, Bortello, and Keller acted with reckless disregard for Goss's right to adequate medical care by recognizing his serious suicide risk yet failing to recommend protective housing, monitoring, or timely treatment. SAC ¶¶ 51–63, 73–78, 147–156. Those

allegations adequately plead the intent required under the Bane Act. Defendants' derivative challenge therefore fails.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests the motion be denied in its entirety, but alternatively, to the extent any portion of the motion is granted, Plaintiff respectfully requests leave to amend accordingly.

Dated: August 28, 2026 THE SEHAT LAW FIRM, PLC

By: /s/ Jeffrey Mikel

Jeffrey Mikel, Esq.
Cameron Sehat, Esq.
Attorneys for Plaintiffs

## PROOF OF SERVICE

I hereby certify that on August 28, 2026, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO CFMG DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system. The CM/ECF system will transmit notice of the filing to all counsel of record who are registered CM/ECF users.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 28, 2026, at Jersey City, New Jersey.

/s/ Jeffrey Mikel
JEFFREY MIKEL