UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JUSTIN J. GOSS et al.,

Plaintiffs,

v.

COUNTY OF SAN LUIS OBISPO et al.,

Defendants.

Case No. 2:26-cv-04235-SB-RAO

ORDER GRANTING CFMG DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 34]

Plaintiff Justin Goss suffered serious injuries when he attempted to commit suicide while in pretrial detention at the San Luis Obispo County Jail. He and his wife, Plaintiff Crystal Branquinho, allege numerous claims against the County of San Luis Obispo and its medical contractors, contending that they were deliberately indifferent to his suicide risk. The medical contractors move to dismiss Plaintiffs' second amended complaint (SAC) for failure to state a claim. Dkt. No. 34. The Court held a hearing on September 18, 2026, and now grants the motion.

I.

Goss attempted suicide twice, in 2000 and 2002. Dkt. No. 25 ¶ 42. While Goss was incarcerated at the San Luis Obispo County Jail in 2020 and 2025, the County noted those attempts in its medical records. *Id.* ¶ 43. At all relevant times, the County allegedly contracted with Defendants Wellpath, LLC "and/or" California Forensic Medical Group (CFMG) to provide jail medical services. *Id.* ¶ 27.[1]

[1] According to Defendants, "Wellpath and CFMG are separate entities," and it is CFMG, not Wellpath, that "contracts with the County to provide medical and mental health services at the San Luis Obispo Jail." Dkt. No. 34 at 20 n.3. The Court accepts the allegations in the SAC as true for purposes of this motion.

Goss was arrested on December 11, 2025, for evading law enforcement, reckless driving, and related charges. *Id.* ¶ 45. The jail nurse who performed his intake screening (who is not a defendant) noted his 2002 suicide attempt, daily drug use, and prior hospitalization for psychiatric problems and referred him for further mental health evaluation by the following day. *Id.* ¶¶ 48–49. About four hours later, Defendant Francine Tillman met with Goss for "a brief mental health check-in." *Id.* ¶ 51. Goss described his suicide attempts in 2000 and 2002 but denied current homicidal or suicidal intent. *Id.* Tillman reviewed grounding techniques, including breathing exercises that Goss could use if he "became overwhelmed with legal worries." *Id.* But she did not make any referrals for follow-up treatment and instead determined that any follow-up treatment should be provided as needed or through sick call. *Id.*

The next morning, Defendant Amber Bortello performed an initial mental health evaluation of Goss. *Id.* ¶ 52. She described his mood as slightly irritated and identified his gender and previous suicide attempts as risk factors, noting that both prior attempts (one by overdose and one by cutting his wrists) caused him to be "placed on a 5150[2] and subsequently inpatient in [San Luis Obispo]." *Id.* ¶¶ 53–54, 56. Goss complained of anxiety and asked to speak with a prescribing provider but did not report current suicidal thoughts. *Id.* ¶ 55. Bortello recorded Goss's "current self-harm/suicide risk level" as low but called for a consultation with a psychiatric nurse practitioner. *Id.* ¶¶ 59–60. She did not recommend that Goss be placed in specialized housing or receive enhanced monitoring. *Id.* ¶ 62.

Three hours later, after Goss asked to speak with a therapist about his concerns regarding court, Defendant Ylliana Keller met with him. *Id.* ¶ 63. She noted that Goss spoke in a monotone, avoided eye contact, and shifted his weight frequently, which Plaintiffs allege are "textbook indicators of being 'potentially' suicidal." *Id.* Goss, however, denied suicidal ideation. *Id.* Keller instructed him how to contact mental health during an emergency and scheduled a follow-up appointment for the following week but took no other action. *Id.*

The following day, on December 13, Goss attempted suicide by jumping head-first from the second story of the housing tier. *Id.* ¶¶ 10, 66. Plaintiffs allege that before jumping, he had repeatedly walked from his cell to the second-floor tier, approached the edge, hesitated, and returned to his cell, all of which was

---

[2] Cal. Welf. & Inst. Code § 5150(a) (authorizing detention for up to 72 hours when, because of a mental health disorder, a person is a danger to himself or others or is gravely disabled).

"observable to custody staff and should have been detected through routine surveillance and monitoring." *Id.* ¶¶ 11–12, 65. The County allegedly received other warnings that Goss was suicidal: (1) a friend showed Goss's suicidal text messages to Defendant Jacob Black, a police officer, the day before his arrest and (2) another inmate repeatedly warned deputies that Goss was suicidal. *Id.* ¶¶ 44, 64. There is no allegation that these warnings or Goss's conduct at the second-floor tier were communicated to Tillman, Bortello, Keller, or any other employee of Wellpath or CFMG.

Goss's suicide attempt resulted in brain damage and other significant injuries including loss of use of one arm, wheelchair confinement, blindness in one eye, loss of his sense of smell, and memory impairment. *Id.* ¶¶ 69–71. He and Branquinho filed this action asserting state and federal claims against the County, Black, and the medical providers, along with numerous Doe defendants. The SAC alleges 10 claims, including the following against some combination of Wellpath, CFMG, Tillman, Bortello, and Keller (collectively, the CFMG Defendants): deliberate indifference to a substantial risk of harm in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment (Count 1); unconstitutional policies and customs (Count 2); failure to train and supervise (Count 3); ratification (Count 4); state-created danger in violation of the Fourteenth Amendment (Count 6); negligence (Count 7); violation of California's Bane Act (Count 8); and loss of consortium (Count 10).

The County answered the SAC; Black moved to dismiss the claims against him; and the CFMG Defendants moved to dismiss all the claims against them except the negligence and loss-of-consortium claims against CFMG, Tillman, Bortello, and Keller in Counts 7 and 10. Dkt. Nos. 26, 30, 34.[3] The Court ordered the parties to meet and confer further, after which Plaintiffs voluntarily dismissed their claims against Black, conceding that, based on the documents produced by Defendants, they had no basis for those claims against him. Dkt. No. 44. The parties were unable to narrow or resolve their disputes over the claims against the CFMG Defendants. Dkt. No. 45.

---

[3] The meet-and-confer email attached to the CFMG Defendants' motion argues that Plaintiffs fail to state a claim for negligence and loss of consortium and asserts that Defendants will seek dismissal of those claims, Dkt. No. 34-1 at 9–10, but the motion itself expressly seeks dismissal only of the other six claims against the CFMG Defendants.

II.

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All well-pleaded factual allegations must be accepted as true, but a court need not credit "[t]hreadbare recitals of the elements of a cause of action" or "a legal conclusion couched as a factual allegation." *Id.* (cleaned up).

III.

The CFMG Defendants argue that the SAC does not include sufficient facts to plausibly allege any of the challenged claims. The Court agrees.

A.

Count 1 alleges that Tillman, Bortello, and Keller were deliberately indifferent to Goss's substantial risk of harm from suicide, in violation of § 1983 and the Fourteenth Amendment. Dkt. No. 25 ¶¶ 69–90.[4]

Section 1983 does not create substantive rights but provides a vehicle for plaintiffs to seek relief for constitutional violations committed by state and local officials. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). The Fourteenth Amendment's Due Process Clause is violated when a state actor is deliberately indifferent to the medical needs of a pretrial detainee. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). The elements of such a claim are: (1) "the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) "those conditions put the plaintiff at substantial risk of suffering serious harm"; (3) "the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) "by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125. For the third element, the defendant's conduct must be objectively unreasonable.

---

[4] The SAC alleges that Defendants repeatedly denied Goss proper medical care from the time he was booked into the jail "until the time of his death." Dkt. No. 25 at 18 ¶ 70. It is undisputed that Goss survived his suicide attempt.

*Id.* Although objective unreasonableness is fact specific, lack of due care is not enough; "the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (cleaned up).

As the CFMG Defendants correctly argue, the SAC does not plausibly allege that reasonable officials in Tillman's, Bortello's, or Keller's positions would have appreciated that Goss faced a high degree of imminent suicide risk, such that their failure to take greater precautions amounted to reckless disregard of that risk. During Goss's first 36 hours in jail, four different medical professionals (including the intake nurse, who is not a defendant) assessed him. When asked, Goss disclosed his prior suicide attempts but repeatedly denied any current suicidal ideation, and there is no allegation that any of the individual defendants was informed of the contrary reports made to the County. Plaintiffs cite no authority suggesting that two prior suicide attempts more than 20 years earlier, combined with anxiety, irritability, monotone speech, avoidant eye contact, or shifting weight, made the high degree of suicide risk obvious notwithstanding Goss's repeated denials of suicidal ideation. *Cf. Est. of Wallmow v. Oneida Cnty.*, 99 F.4th 385, 391 (7th Cir. 2024) ("An express statement that the deceased was not considering suicide from the deceased himself weighs heavily against objective unreasonableness.") (cleaned up).

The SAC's own allegations further undercut the claim that the medical professionals should have appreciated a high degree of suicide risk. The SAC invokes national standards for when inmates require special protection because of suicide risk:

> An acutely suicidal inmate should be placed on constant observation and not left unmonitored and a non-acutely suicidal inmate (potential or inactive) who expresses current suicidal ideations (eg: a wish to die without a specific threat or plan) and/or has recent prior history of self-destructive behavior should be placed on suicide precautions and observed at staggered intervals not to exceed every 15 minutes.

Dkt. No. 25 at 17 ¶ 81 (emphasis omitted).[5] Plaintiffs conclusorily allege that Tillman, Bortello, and Keller "knew that each was responding to a potentially suicidal inmate," *id.* ¶ 149, but there is no allegation that any of them was aware

[5] The SAC has inconsistent paragraph numbering and repeats several paragraph numbers, including paragraph 80 three times. The Court expects Plaintiffs to exercise greater care in the future.

that Goss had "expresse[d] current suicidal ideations"—which he expressly denied when asked—or that he had any "*recent* prior history of self-destructive behavior," *id.* at 17 ¶ 81 (emphasis added). Thus, even the standard Plaintiffs invoke does not identify Goss—given the facts allegedly known to Tillman, Bortello, and Keller—as an inmate requiring the additional suicide precautions described in the SAC. Accordingly, Plaintiffs have not stated a plausible claim for deliberate indifference against these Defendants.

B.

Counts 2, 3, and 4 allege that the County, Wellpath, and CFMG are liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for their employees' constitutional violations based on three theories of municipal liability: (1) an unconstitutional policy or custom, (2) failure to train or supervise, and (3) ratification. A *Monell* claim, which permits a plaintiff to recover against a municipality when an official policy or practice is the moving force behind an employee's constitutional violation, is "derivative of a claim against the officer and requires an underlying civil rights claim against an officer." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 740 (9th Cir. 2020) (cleaned up). Thus, while Wellpath and CFMG focus on other deficiencies, Plaintiffs' failure to plausibly allege an underlying Fourteenth Amendment violation by Tillman, Bortello, or Keller is fatal to the *Monell* claims against Wellpath and CFMG.

The claims also independently fail for the reasons identified in the motion. Plaintiffs' allegations about policies, training failures, and ratification focus almost exclusively on the County. The SAC does not identify any policy or practice of Wellpath or CFMG that caused the alleged constitutional violation. Although it cites several incidents involving Wellpath at other facilities to establish a pattern of deliberate indifference, none occurred at the San Luis Obispo County Jail, and only two involved suicide attempts.[6] Without allegations tying those disparate incidents to the practices alleged here, they do not plausibly establish a Wellpath custom that caused Goss's injuries. Dkt. No. 25 at 26–32 ¶¶ 86–101; *see Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of

[6] Those two incidents occurred at the Fresno County Jail, one in 2012 and the other in 2016, and involved materially different circumstances: one detainee attempted suicide after active self-harm and alleged denial of prescribed psychiatric medication, while the other committed suicide after previously being classified as a high suicide risk. Dkt. No. 25 at 31–32 ¶¶ 98–99.

sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.”). Similarly, the SAC contains no allegations of comparable prior incidents involving CFMG. Thus, Count 2 fails to state a claim.

Counts 3 and 4 likewise fail. The failure-to-train claim in Count 3 does not identify a training deficiency attributable to Wellpath or CFMG; the operative allegations are about the County’s alleged failures to train its employees. Dkt. No. 25 ¶¶ 102–12. The ratification claim in Count 4 similarly does not identify any ratification by Wellpath or CFMG; the operative allegations concern the County’s policymakers’ alleged knowledge of systemic deficiencies and failure to correct the challenged practices despite that knowledge. *Id.* ¶¶ 113–20.

Accordingly, the *Monell* claims against Wellpath and CFMG fail to state a claim for relief.

C.

Count 6 alleges that Tillman, Bortello, and Keller are liable under the Fourteenth Amendment for subjecting Goss to a state-created danger. The Ninth Circuit “has held state officials liable, in a variety of circumstances, for their roles in creating or exposing individuals to danger they otherwise would not have faced.” *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006). A claim under this doctrine requires affirmative conduct by a defendant acting with deliberate indifference to a known or obvious danger. *Id.*; *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).

Plaintiffs’ claim fails for two independent reasons. First, as discussed, the SAC does not plausibly allege that Tillman, Bortello, or Keller was deliberately indifferent to a known or obvious risk that Goss would attempt suicide. Second, Plaintiffs do not allege any affirmative act by Tillman, Bortello, or Keller that created or increased the danger Goss faced. Goss was already incarcerated without the suicide precautions that Plaintiffs allege should have been imposed. The alleged danger—Goss’s risk of suicide while housed without those precautions—therefore existed before the challenged conduct. Their theory is that Tillman, Bortello, and Keller failed to take additional precautions that would have mitigated that danger, not that any of them affirmatively created or increased that danger. Plaintiffs do not allege, for example, that Goss would have been less likely to attempt suicide had he not interacted with Tillman, Bortello, or Keller. Accordingly, Count 6 is dismissed.

D.

Finally, Count 8 alleges a claim under the Bane Act against the County and the CFMG Defendants. The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). Even if Plaintiffs had plausibly alleged an underlying constitutional violation, the SAC does not allege facts showing that any of the CFMG Defendants threatened, intimidated, or coerced Goss.

Plaintiffs rely on *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018), which held that reckless disregard for a plaintiff's constitutional rights may establish the specific intent required by the Bane Act. Plaintiffs argue that under *Reese*, Defendants' deliberate indifference to Goss's suicide risk constitutes reckless disregard for his rights and therefore supports a Bane Act claim. But *Reese* addresses the Bane Act's specific-intent requirement; it does not dispense with the requirement that the interference with a constitutional right occur through "threat, intimidation, or coercion." *Id*. at 1043–45. Because the SAC alleges no such conduct by the CFMG Defendants, Count 8 fails on that basis alone. It also fails because, as discussed, Plaintiffs have not plausibly alleged an underlying violation based on deliberate indifference. Accordingly, Count 8 is dismissed as to the CFMG Defendants.

IV.

Plaintiffs request leave to amend in the event any portion of the motion is granted, which the CFMG Defendants oppose. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave may be denied, however, for reasons including "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs have already amended their pleading twice, although this is the first pleading challenge that has been adjudicated. Because it was unclear based on Plaintiffs' representations at the hearing whether further amendment would be futile, the Court permitted Plaintiffs to file a proposed third amended complaint (TAC). Dkt. No. 59. The proposed TAC abandons the state-created danger claim and no longer asserts the ratification claim against the CFMG Defendants, but it otherwise reasserts the same claims with some additional allegations. Dkt. No. 61. Most notably, the proposed TAC alleges that Goss separately told the intake nurse,

Tillman, Bortello, and Keller that although he was not presently suicidal, they should ask him again in two days (or in the near future). *Id.* ¶¶ 48, 51, 56, 65. The proposed TAC identifies additional information allegedly known to the County about Goss's suicide risk but still does not allege that the County conveyed it to the CFMG Defendants. *See, e.g.*, *id.* ¶ 4 ("It is unclear whether dispatch and or the arresting deputies communicated these facts to jail medical or custodial staff.").

The CFMG Defendants argue that amendment would be futile because the additional proposed allegations still do not rise to the level of deliberate indifference. They cite no authorities directly on point, and the Court declines to conclude without giving Plaintiffs an opportunity to respond that amendment of the deliberate indifference claim against Tillman, Bortello, and Keller necessarily would be futile. *See Fair Hous. Council of Cent. California, Inc. v. Nunez*, No. 1:10-CV-02073, 2012 WL 217479, at *4 (E.D. Cal. Jan. 24, 2012) ("Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.") (collecting cases).

As for the remaining dismissed claims, however, the proposed TAC makes clear that amendment would be futile. It adds no allegations whatsoever to the claims against the CFMG Defendants for unconstitutional policy or custom and violation of the Bane Act. Thus, those unchanged claims necessarily fail for the reasons identified in this order. As for the failure-to-train claim, the proposed TAC adds only a single conclusory allegation that "WELLPATH and CFMG also failed to train their employees and mental health professionals in properly performing mental health assessments, in over relying [sic] on denials of current suicidal ideation, and in failing to ask appropriate follow up questions regarding recent suicidal thoughts and behaviors." Dkt. No. 61 ¶ 113. Other than alleging that Wellpath "typically provides training, training materials, and policies to CFMG and its employees," *id.* ¶ 28, the proposed TAC contains no information about what training Wellpath or CFMG provided or how it was deficient, let alone how Defendants' policymakers were deliberately indifferent to the need for better training. *See Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (explaining that to prevail on a failure-to-train claim, "the plaintiff must allege facts to show that the official disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (cleaned up). The conclusory allegation that Wellpath and CFMG failed to provide adequate training falls short.

Accordingly, the Court will permit Plaintiffs to file a third amended complaint, but only to reallege their claim in Count 1, which Defendants have not shown is necessarily futile. The other claims against the CFMG Defendants dismissed in this order are dismissed without leave to amend. Plaintiffs shall exercise greater care in the preparation of their TAC, including by correcting the paragraph numbering.[7] Plaintiffs are cautioned that if Defendants move to dismiss the TAC for failure to state a claim, Plaintiffs should not expect to be given leave yet again to amend their pleading to include allegations that could have been included in the TAC.

V.

The CFMG Defendants' motion to dismiss is granted. Counts 1, 2, 3, 4, 6, and 8 of the SAC are dismissed as to Wellpath, CFMG, Tillman, Bortello, and Keller for failure to state a claim. The negligence and loss-of-consortium claims in Counts 7 and 10 remain pending, as do all claims against the County and Doe defendants.[8]

If they wish to reassert their claim in Count 1 against Tillman, Bortello, and Keller, Plaintiffs shall file a new TAC that complies with the Court's instructions in Section IV no later than September 30, 2026. Defendants shall answer or otherwise respond to the TAC no later than October 9, 2026. If Plaintiffs do not file a TAC, the remaining CFMG Defendants shall answer the SAC no later than October 9.

Date: September 25, 2026

Stanley Blumenfeld, Jr.
United States District Judge

[7] Even after the Court in its tentative order pointed out the problems with the SAC's paragraph numbering, Plaintiffs' proposed TAC did not fix them. *See* Dkt. No. 61 at 20, 26 (restarting paragraph numbering twice at paragraph 68).

[8] The deadline to identify and serve any Doe defendants remains October 23. Dkt. No. 48 at 1.